UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

APR 16 2010

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

DEBORAH THOMAS,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

ACTION NO. 2:09cv342

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Deborah Thomas ("Thomas"), brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") granting her Supplemental Security Income ("SSI"), but denying her claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed August 10, 2009. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be AFFIRMED and the case be DISMISSED.

### I. PROCEDURAL BACKGROUND

On April 10, 2007, Thomas filed an application for DIB and SSI alleging an onset of disability on February 17, 2004, due to a partial rotator cuff tear/rotator cuff impingement syndrome, a

left knee injury, and high blood pressure. (R.[1] at 74-76.) Thomas's application was initially denied by the Social Security Administration on July 2, 2007 (R. at 51), and upon reconsideration on December 26, 2007 (R. at 59).

On February 13, 2008, Thomas requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration. (R. at 63-65.) That hearing was held in Norfolk, Virginia, on September 9, 2008. (R. at 12.) Thomas testified at the hearing (R. at 12); she was represented by her attorney, Charlene Morring, Esq. (R. at 12).

On October 9, 2008, the ALJ issued a partially favorable decision, finding that Thomas was entitled to SSI as of her fiftieth (50th) birthday on August 28, 2007, but that she was not entitled to DIB because she was not disabled within the meaning of the Act at any time from the alleged onset date, February 17, 2004, to the date on which she no longer had sufficient quarters of coverage to remain insured, September 30, 2006. (R. at 12.) Specifically, the ALJ determined that until August 27, 2007, Thomas "retained the ability to adjust to other work existing in significant numbers in the national economy," and thus, she was not disabled within the meaning of the Act. (R. at 19.)

On October 17, 2008, Thomas requested review of the ALJ's

---

[1] "R." refers to the transcript of the administrative record of proceedings relating to this case.

2

decision by the Appeals Council of the Office of Hearings and Appeals ("Appeals Council"). (R. at 6.) The Appeals Council denied Thomas's request for review on May 29, 2009, stating that it found no reason to review or change the ALJ's decision. (R. at 1-2.) This makes the ALJ's decision the "final decision" of the Commissioner subject to judicial review here, pursuant to 42 U.S.C. § 405(g). See 20 C.F.R. §§ 404.981, 416.1481.

Thomas brought the instant action seeking judicial review of the Commissioner's decision to deny her claim for DIB. Thomas filed the instant Complaint on July 24, 2009, which Defendant answered on October 5, 2009. Thomas filed a motion for summary judgment with a memorandum in support on November 6, 2009. Defendant filed a motion for summary judgment and in opposition to Thomas's motion for summary judgment with a memorandum in support on December 3, 2009. Thomas filed a response to Defendant's motion for summary judgment on December 21, 2009. Neither party has indicated special circumstances requiring oral argument in this matter; therefore, the case is deemed submitted for decision based on the memoranda.

## II. **FACTUAL BACKGROUND**

Thomas is a fifty-two (52) year old female, who was forty-six (46) years old on the date of the alleged onset of her disability. Thomas was fifty-one (51) at the time of the ALJ's October 9, 2008 decision. (R. at 12.) When Thomas's insured status expired on

3

September 30, 2006,[2] she was forty-nine (49) years old. Thomas has completed the seventh grade, and can communicate in English. Thomas's only recognized full-time employment during the fifteen (15) years prior to her alleged period of disability was as a "fire watcher."[3] (R. at 27-28.) Thomas alleges that she became disabled as of February 17, 2004, due to a partial rotator cuff tear/rotator cuff impingement syndrome, a left knee injury, and high blood pressure. (R. at 51.)

In general, the ALJ determined that at the time her insurance expired on September 30, 2006, Thomas suffered from left knee and shoulder pain, which the ALJ found to be severe impairments, but that Thomas was not disabled within the meaning of the Act. (R. at 12, 19.) In reaching the decision to deny DIB, the ALJ made several factual findings and conclusions of law. First, Thomas had not engaged in substantial gainful activity since the alleged onset of disability on February 17, 2004. (R. at 12, 19.) Second, Thomas had the following severe impairments: (1) partial rotator cuff tear/rotator cuff impingement syndrome, and (2) left knee injury. (R. at 14.) Third, Thomas's impairments did not meet or

---

[2] The parties do not dispute that September 30, 2006, is the date on which Thomas's insurance benefits expired, and the date by which Thomas must have established a period of disability in order to be eligible for DIB. (Def.'s Mem. 9; Pl.'s Mem. 8.)

[3] At the hearing, Thomas testified that as a fire watcher, she carried a fifteen (15) pound fire extinguisher and helped prevent and extinguish fires caused by welding. (R. at 28.)

4

medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 416.925. (R. at 16.) Fourth, Thomas had the residual functional capacity to lift and carry ten (10) pounds, walk and/or stand for two (2) hours and sit for six (6) hours in an eight (8) hour workday, and crouch, crawl, stoop, kneel and climb occasionally. Fifth, Thomas was unable to perform any past relevant work. (R. at 17.) Sixth, on the alleged disability onset date, Thomas was forty-six (46) years old, which is defined as a "younger individual" age forty-five (45) to forty-nine (49). (R. at 18.) Thomas reached the age of fifty (50), which is considered an individual "closely approaching advanced age," on August 27, 2007. Id. Seventh, the ALJ found that Thomas has a limited education and is able to communicate in English. Id. Eighth, until Thomas's age category changed when she reached fifty (50), the transferability of Thomas's job skills was not material to the determination of disability.[4] Id. Ninth, based on Thomas's age, education, work experience, and residual functional capacity, there were jobs that existed in the national economy that Thomas could perform until August 27, 2007, when she reached age fifty (50). Id. However, the ALJ found that after August 27, 2007, when Thomas turned fifty (50), there were not jobs existing in

---

[4] When a claimant is under the age of fifty (50), the Medical Vocational Rules support a finding of "not disabled," irrespective of whether the claimant has transferrable job skills, if the claimant has the RFC to perform work. (R. at 18.)

5

significant number in the national economy that Thomas could perform. Id.

Thus, the ALJ found that Thomas was not under a disability, as defined by the Act, from February 17, 2004, through August 26, 2006. The ALJ did, however, find that Thomas was disabled as of August 27, 2007, and remained disabled through the date of the ALJ's decision. (R. at 19.) Based on the findings above, the ALJ authorized SSI beginning on August 27, 2007, but declined to award DIB because Thomas was not disabled until after the expiration of Thomas's insurance on September 30, 2006.[5]

## III. **STANDARD FOR SUMMARY JUDGMENT**

The Court shall grant summary judgment if, viewing the record as a whole, it concludes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts are deemed material if they might affect the outcome of the case. Celotex Corp, 477 U.S. at 322-27. In other words, the moving

---

[5] Thomas must have established disability before September 30, 2006, approximately eleven (11) months before August 27, 2007, the date on which the ALJ found that Thomas was disabled within the meaning of the Act.

6

party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. Id.

In deciding a summary judgment motion, the Court must "view[] the record as a whole in the light most favorable to the non-movant." Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). If "the evidence . . . is so one-sided that one party must prevail as a matter of law," the Court should grant summary judgment in that party's favor. Anderson, 477 U.S. at 251-52. Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Celotex, 477 U.S. at 322, as the non-moving party is required to "set out specific facts showing a genuine issue for trial" with respect to that element, Fed. R. Civ. P. 56(e)(2).

When confronted with cross-motions for summary judgment, "the standards upon which the Court evaluates the motions for summary judgment do not change." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "When

deciding cross-motions for summary judgment, a district court retains the responsibility to examine the record to ensure that no disputed issues of fact exist, despite the parties' assurances to that effect." Kavanaugh v. City of Phoenix, 25 F. App'x 516, 517 (9th Cir. 2001) (citing Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)).

## IV. STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The Commissioner ultimately held that Thomas was not under a disability within the meaning of the Act during the period in which Thomas was insured. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is "specific and narrow." Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam), superceded in non-relevant part by 20 C.F.R. § 404.1517(d)(2); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter, 993 F.2d at 34 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642

8

(4th Cir. 1966)).

The Commissioner has the duty "to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). The Court "do[es] not conduct a *de novo* review of the evidence" or of the Commissioner's findings. Schweiker, 795 F.2d at 345. In reviewing for substantial evidence, the Court "do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Id. (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson, 402 U.S. at 401. The issue before this Court, therefore, is not whether Thomas was disabled, but whether the Commissioner's finding that Thomas was not disabled prior to the expiration of Thomas's disability insurance is supported by substantial evidence and was reached based upon a correct application of the relevant law. See id.; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper

9

standard or misapplication of the law.").

## V. **ANALYSIS**

The Social Security Regulations ("SSR") define "disability" for the purpose of obtaining disability benefits under Title II or Title XVI of the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[6] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(1)(A). To meet this definition, the claimant must have a severe impairment that makes it impossible to do previous work or any other substantial gainful activity[7] that exists in the national economy. 20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C. § 423(d)(2)(A).

### A. **Sequential Disability Analysis**

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth at 20 C.F.R. §§ 404.1520, 416.920. See Hall v. Harris, 658 F.2d 260,

---

[6] "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[7] "Substantial gainful activity means work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 409.910.

10

264-65 (4th Cir. 1981). Under this process, the ALJ must determine in sequence:

(1)   Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working). If so, the claimant is *not* disabled and the inquiry is halted. 20 C.F.R. §§ 404.1520(a)(4)(I), (b), 416.920(a)(4)(I), (b).

(2)   Whether the claimant has a severe impairment (i.e., whether the claimant has an impairment that "significantly limits [the claimant's] physical or mental ability to do basic work activities"). If not, the claimant is *not* disabled and the inquiry is halted. Id. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c).

(3)   Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted. Id. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

(4)   Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is *not* disabled and the inquiry is halted. Id. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f).

11

(5) Whether the claimant is able to perform any other work considering the claimant's residual functional capacity[8] and vocational abilities. If so, the claimant is *not* disabled. Id. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).

In this case, the ALJ decided at step five of the analysis that Thomas was not disabled.

## 1. Steps One Through Four

At step one of the analysis, the ALJ determined that Thomas "had not engaged in substantial gainful activity since February 17, 2004, the alleged onset date."[9] (R. at 14.) At step two, the ALJ determined that Thomas's partial rotator cuff tear/rotator cuff impingement syndrome and left knee injury are severe impairments. The pain in these locations "significantly limits the claimant's ability to perform basic work activities by restricting her ability to lift, carry, stand and walk." (R. at 14-15.) However, the ALJ determined that there was no evidence that Thomas's "possible degenerative disc disease and mild degenerative joint disease" caused significant limitations on Thomas's ability to perform basic

---

[8] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[9] The ALJ determined that Thomas worked part-time for a pizza restaurant after February 17, 2004, but the amount of money she earned was not indicative of the performance of substantial gainful activity. (R. at 14.)

work activities. (R. at 16.) Further, the ALJ found that there was no medical evidence establishing carpal tunnel syndrome, nor was the existence of any medically determinable impairment related to this disorder, and no evidence that Thomas's history of hypertension caused any significant limitations on Thomas's ability to perform basic work activities. Id. At step three, the ALJ found that Thomas "does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." Id. At step four, the ALJ found that Thomas "is unable to perform any past relevant work." The ALJ's finding that Thomas was unable to perform her past relevant work as a fire watcher and machine operator was based on the ALJ's determination of Thomas's residual functional capacity. These jobs required Thomas to lift more than ten (10) pounds or to stand or walk for more than two (2) hours in an eight (8) hour workday. (R. at 17.)

## 2. Residual Functional Capacity and Step Five

Prior to steps four and five, the ALJ determined Thomas's residual functional capacity ("RFC"). In general, RFC is defined as the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from the claimant's impairments. In making this determination, the ALJ must consider all of the claimant's impairments, including those impairments that are not severe. See 20 C.F.R. §§ 404.1520(c), 404.1545,

13

416.920(c), 416.945; SSR 96-8p. In determining a claimant's RFC, an ALJ should consider all of the claimant's symptoms, subjective complaints, medical evidence and any medical opinions made by acceptable medical sources that reflect judgments about the nature and severity of the impairment and resulting limitations, based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and Social Security Regulations 96-4p and 96-7p. (R. at 16.) The ALJ also should consider opinion evidence in accordance with 20 C.F.R. §§ 404.1527, 416.927, and Social Security Regulations 96-2p, 96-5p, 96-6p and 06-3p. Id.

In determining Thomas's RFC, the ALJ evaluated the objective medical evidence in the record, including the findings of examining physicians, objective test results, and the generally conservative nature of the treatment required. (R. at 14-17.) The ALJ also considered Thomas's testimony and the factors listed in 20 C.F.R. §§ 404.1529(c), 416.929(c). Id. In considering Thomas's symptoms, the ALJ followed a two-step process in which the ALJ first determined whether there was an underlying medically determinable impairment, and then evaluated the "intensity, persistence, and limiting effect of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities." (R. at 16.) Based on the evidence as a whole, the ALJ determined that as of September 30, 2006, Thomas had the RFC to

14

perform sedentary work activities.[10]

Specifically, the ALJ found that Thomas could "lift and carry ten (10) pounds, walk and/or stand for 2 hours and sit for 6 hours in an 8-hour workday." (R. at 16.) The ALJ also found that Thomas could "crouch, crawl, stoop, kneel and climb occasionally." Id. The ALJ also considered Thomas's other impairments, namely shoulder and knee pain, which limited Thomas's functional ability to lift, carry, walk, and stand. However, the ALJ found that despite these pain limitations, Thomas was capable of performing "at least . . . sedentary work activities." (R. at 17.)

At step four, the ALJ found that Thomas did not have the RFC to perform any past relevant work.

It is the claimant who bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512, 416.912; Smith v. Califano, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that she cannot do any work she has done in the past because of a severe impairment, and she lacks the residual functional capacity to return to her former employment, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national or local economy that the claimant could

---

[10] Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

perform consistent with her residual functional capacity, age, education, and past work experience.   Hunter, 993 F.2d at 35; Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).

Here, the ALJ found that on the date of her alleged onset of disability, Thomas was classified as a "younger individual", age forty-five (45) to forty-nine (49), within the meaning of 20 C.F.R. §§ 404.1563, 416.963, capable of performing sedentary work. (R. at 18.)   Therefore, at step five, the ALJ found Thomas "not disabled" as of September 30, 2006.   Id.   However, the ALJ found that as of Thomas's fiftieth birthday on August 27, 2007, Thomas's age classification changed, and under Medical-Vocational Guidelines Rule 201.10, she became disabled under the Act.   Id.

### a.  Claimant's Testimony & Opinion Evidence

In reaching a conclusion about Thomas's RFC, the ALJ gave consideration to Thomas's testimony.  The ALJ noted in his opinion that Thomas's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are only partially credible."  (R. at 17.)  The ALJ found that the objective medical evidence, including test results, the generally conservative nature of the treatment required, and the objective findings of the examining physician do not support Thomas's allegations regarding the "disabling" nature of her pain.   Id.   Specifically, the ALJ found that the x-ray and

16

MRI evidence confirm that Thomas has abnormalities in her left shoulder, which result in restricted range of motion in that extremity, and abnormalities in her left knee, which cause pain in that joint. However, the ALJ considered treatment notes which state that Thomas "can walk without assistance . . . [and] carried a cane but she did not use it for weight or balance." Id. Further, the ALJ found that Thomas "has difficulty using her left arm for lifting and carrying but there is no evidence of significant limitations in her right extremity . . . [and] there are no complications from her knee surgery." Further, although Thomas reports some sleepiness from the use of Ultracet, the ALJ found that "the record does not support severe daytime fatigue that would prevent her from performing basic work activities." Id. The ALJ also considered opinion evidence from the DDS medical consultant, who found insufficient evidence to determine the degree of limitation caused by Thomas's impairments, but the ALJ gave this conclusion minimal weight because more recent medical evidence "combined with the rest of the record [showed] that claimant retain[ed] the ability to perform at least sedentary work." Id.

### b. Review of the Medical Evidence

In addition to considering the claimant's testimony and the opinion evidence provided, the ALJ considered the objective medical evidence in the record and found that based on consideration of the entire case record, "[t]he claimant has the residual functional

17

capacity to perform at least . . . sedentary work activities." Id.
Specifically, the ALJ found that despite Thomas's complaints of
disabling shoulder and knee pain, and chronic back and neck pain,
there was "no evidence of significant limitations in her ability to
sit or in her ability to perform sedentary work activities." Id.

## B. Plaintiff's Allegations

Thomas makes two challenges to the ALJ's analysis: (1) the
ALJ's determination that Thomas was not disabled is not supported
by substantial evidence because the record demonstrates that Thomas
was unable to perform sedentary work, and (2) the ALJ failed to
obtain a vocational expert testimony as required by 20 C.F.R. §§
404.1566, 416.966.[11] (Pl.'s Mem. 14; Pl.'s Repl. Br. 5.) The Court
addresses these arguments in turn.

As discussed below, the Court FINDS that there is substantial
evidence in the record to support the ALJ's finding that Thomas
could perform sedentary work. Further, the Court FINDS that it was
within the ALJ's discretion whether or not to obtain a vocational
expert, and the ALJ was not required to do so. Accordingly, the
Court RECOMMENDS that the Commissioner's decision be AFFIRMED and
the case be DISMISSED.

---

[11] The Court notes that though Thomas's allegations are
general, the ALJ found in Thomas's favor regarding SSI benefits.
Therefore, the Court assumes that Thomas is not challenging her
receipt of SSI benefits. The Commissioner did not challenge the
ALJ's SSI determination, and accordingly, the Court's review is
limited to the ALJ's DIB determination.

18

## 1. The ALJ's Residual Functional Capacity Assessment

At the outset, the Court notes that Thomas is challenging the ALJ's determination that Thomas was not disabled before September 30, 2006. Essentially, Thomas's claim is that the ALJ's finding that Thomas was "not disabled" prior to August 27, 2007, is not supported by substantial evidence. Specifically, Thomas alleges that the ALJ's RFC assessment was erroneous because Thomas's "inability to perform sustained work activities on a regular and continuing basis erodes the ability to perform even sedentary work." (Pl.'s Mem. 14.)

When assessing a claimant's RFC, the ALJ "will consider [the claimant's] ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). Physical requirements include the claimant's ability to sit, stand, walk, and lift. Id. § 404.1545(b). When assessing the claimant's mental abilities, the ALJ considers "limitations in understanding, remembering, and carrying out instruction, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." Id. § 404.1545(c). Finally, the ALJ considers sensory impairments and environmental restrictions. Id. § 404.1545(d). "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling (SSR) 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996); see

19

<u>also</u> 20 C.F.R. § 404.1545(a)(2), (e).

Here, the ALJ considered "the objective findings on examinations, test results, the findings of an examining physician and the generally conservative nature of the treatment required," as well as the opinion evidence of the Department of Disability Services ("DDS") medical consultant, and Thomas's own testimony. The ALJ concluded that Thomas has shoulder and knee pain, which "limit her ability to lift, carry, walk and stand but there is no evidence of significant limitations in her ability to sit or in her ability to perform sedentary work activities." (R. at 17.) In assessing Thomas's limitations, the ALJ noted that Thomas reports chronic back pain, neck pain and shoulder pain that prevent her from performing sustained work activities on a consistent basis. <u>Id.</u> The ALJ also noted that the objective medical evidence establishes medically determinable impairments that can reasonably result in the types of symptoms Thomas describes, but that "the record does not support the degree of limitation alleged." <u>Id.</u>

The ALJ found that there was no evidence supporting the conclusion of a back impairment. <u>Id.</u> Additionally, although the ALJ found that x-ray and MRI evidence confirm abnormalities in Thomas's left shoulder, which restrict her range of motion, as well as abnormalities in her left knee, which cause pain in that joint, the notes from Thomas's treating physician demonstrate that Thomas could walk without assistance. (R. at 17, 413.) Further, the ALJ

determined that Thomas "has difficulty using her left arm for lifting and carrying but there is no evidence of significant complications in her upper right extremity." (R. at 17.) Likewise, the ALJ determined that there was no evidence to support a finding that there were complications from her knee surgery, and that her reported sleepiness stemming from the use of Ultracet did not support severe daytime fatigue that would prevent Thomas from performing basic work activities. Id.

When making determinations regarding Thomas's severe and non-severe impairments and corresponding RFC, the ALJ relied on the examination by Dr. Richard Hoffman and his medical consultant report for the Virginia Department of Rehabilitative Services on March 5, 2005. (R. at 14-15, 413-17.) In that report, Dr. Hoffman observed that Thomas had severe impingement syndrome in her left shoulder, and a possible labral tear. Dr. Hoffman also noted that during her most recent orthopedic examination, Thomas was already having "good function" with her left shoulder, with normal internal and external rotation. Additionally, Dr. Hoffman noted that Thomas still experienced pain, especially with exterior rotation against resistance. (R. at 15, 413.) Dr. Hoffman further noted that Thomas had a significant injury to her left knee, but the post-arthroscopy status of Thomas's knee was improving, with "flexion greater than 90 degrees" and progression towards being able to walk without a cane. Id. The ALJ also considered Dr. Hoffman's

21

conclusion that there were "some limitations on her activity level, but she shows she would be able to lift between 15 and 20 pounds occasionally and between 10 and 15 pounds frequently," (R. at 15, 416), and that there is no evidence that Thomas "would have any difficulty sitting for at least six hours during an eight-hour time period or standing three or four hours during that time period." Id.

The ALJ also noted that in March 2005, Thomas's treating orthopedist, Dr. Wilford Gibson, anticipated that Thomas's condition would improve after shoulder surgery to the point of maximum medical improvement and to the point where Thomas could return to work in four weeks (R. at 15, 415-16), and physical therapy and treatment notes through April 2008 show no significant deterioration in Thomas's physical condition except for ongoing complaints of knee and shoulder pain (R. at 15). Dr. Gibson's summary of Thomas's physical therapy progress on September 6, 2005, also supports the ALJ's findings. Dr. Gibson noted that Thomas could use her shoulder through a full active range of motion, and could extend her knee fully and flex it beyond 90 degrees. (R. at 314.) Further, Dr. Gibson released Thomas from care, and expressed that he could see no reason to see her back in the future. He indicated that the Physical Capacities Evaluation showed that Thomas could work eight hours per day. (R. at 313.)

As noted above, the ALJ also took Thomas's testimony into

consideration, as well as the opinion of the DDS medical consultant. However, the ALJ determined that Thomas's testimony that her pain was "disabling" was not consistent with the generally conservative nature of the treatment required or with the findings of the examining physician. (R. at 17.) Thus, the ALJ determined that Thomas's statements concerning the intensity, persistence, and limiting effects of these symptoms were only partially credible. Further, although the DDS medical consultant found insufficient evidence to determine the degree of limitation caused by Thomas's impairments, the ALJ afforded this conclusion only minimal weight because more recent medical evidence "combines with the rest of the record to show that the claimant retains the ability to perform at least sedentary work activities." Id.

In her Motion for Summary Judgment, Thomas correctly asserts that SSR 96-8p requires that RFC assessments consider a claimant's maximum ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. (Pl.'s Mem. 12.) However, Thomas's allegation that the ALJ failed to consider Thomas's ability to perform work on a regular and continuing basis is unfounded. The ALJ considered the findings of Dr. Hoffman, the generally conservative nature of the treatment required, and Thomas's pain limitations. (R. at 17, 415-18.) Specifically, the ALJ considered limitations on Thomas's ability to lift, carry, walk, and stand. Id. It was only after accounting for the

23

effects of Thomas's limitations on basic work activities that the ALJ determined Thomas's RFC. Further, the ALJ's RFC determination itself is evidence that the ALJ considered Thomas's ability to perform work on a regular and continuing basis. The ALJ concluded that Thomas could "lift and carry 10 pounds, walk and/or stand for 2 hours and sit for 6 hours in an 8-hour workday." (R. at 16.) Thus, the ALJ made explicit reference to Thomas's ability to perform basic work activities within the regular and continuing framework of an eight hour workday. Therefore, the ALJ's RFC determination complied with the requirements of SSR 96-8p.

Because the ALJ considered the limiting effects of Thomas's severe and non-severe impairments when making the RFC determination, and because the ALJ based his RFC determination on substantial evidence in accordance with the law, the Court FINDS that the ALJ's finding that Thomas's RFC includes the ability to perform sedentary work activities is supported by substantial evidence. Accordingly, the ALJ's determination that Thomas has the residual functional capacity to perform sedentary work should be AFFIRMED.

## 2. The ALJ's Failure to Obtain Vocational Expert Testimony

Thomas argues that the ALJ erred by not securing the services of a vocational expert in determining that Thomas could perform the full range of sedentary work. (Pl.'s Mem. 12.) Specifically, Thomas asserts that the ALJ was required to produce expert

24

vocational testimony evincing that jobs exist in the national economy that Thomas could perform from February 17, 2004, to August 26, 2006. Id. at 13. Thomas claims that the ALJ was required to obtain testimony from a vocational expert to "ascertain the effect of the assessed limitations on Thomas's occupational base," and to "identify examples of appropriate jobs and to state the incidence of such jobs in the national economy." Id. at 13-14.

Thomas's assertions are not persuasive because the ALJ relied on the Medical Vocational Guidelines, as prescribed by the Act, and he was not required to consult a vocational expert.

### a. The Medical Vocational Guidelines

To provide uniformity in assessing vocational ability for claims which involve only "exertional" limitations, the Social Security Administration has adopted the Medical Vocational Guidelines. 20 C.F.R. § 404.1569. The Medical-Vocational Guidelines of Appendix 2 take administrative notice of the existence of jobs at the sedentary, light, and medium levels of exertion. See 20 C.F.R. Part 404 Subpart P Appx. 2 §§ 201.00(a), 202.00(a), 203.00(a) ("Grids"). Each of the tables in Appendix 2 take into account the claimant's age, education, and skill level from past relevant work to determine whether the claimant is disabled. In general, individuals eighteen (18) to forty-nine (49) years of age are treated alike. 20 C.F.R. Part 404 Subpart P Appx 2 § 201.00(h).

Here, the ALJ applied the Medical-Vocational Guidelines to determine whether, with the RFC to perform a "full range of sedentary work," and considering her "age, education, and work experience," Thomas was disabled within the meaning of the Act. (R. at 18.) Under Medical-Vocational Rules 201.18 and 201.19,[12] the ALJ determined that Thomas was "not disabled." (R. at 18.)

### b. The ALJ's Use of the Guidelines

To determine whether an ALJ may rely on the Medical-Vocational Guidelines without consulting a vocational expert, "[t]he proper inquiry . . . is whether [a] nonexertional condition affects [the claimant]'s residual functional capacity to perform work of which he is exertionally capable." Walker, 889 F.2d at 49. When a claimant does not have a nonexertional condition, or when a nonexertional condition does not reduce a claimant's RFC to perform work for which she exertionally capable, the ALJ may rely on the finding prescribed by the Medical-Vocational Guidelines applied to exertional conditions, and testimony from a vocational expert is unnecessary. See id.; Schweiker, 719 F.2d at 725. In other words, when a claimant has the RFC to perform sedentary, light or medium

---

[12] Rule 201.18 applies to younger individuals, age forty-five (45) to forty-nine (49), who have a "[l]imited or less [education]-at least literate and able to communicate in English," and are unskilled. Rule 201.19 applies to younger individuals, age forty-five (45) to forty-nine (49), who have a "[l]imited or less [education]-at least literate and able to communicate in English," and have skilled or semi-skilled work experience that is not transferable. Under either rule, the table indicates a finding of not disabled.

26

exertional work and the claimant does not have additional nonexertional limitations, testimony from a vocational expert is unnecessary.

The ALJ's use of the Medical-Vocational Guidelines was appropriate in this case. Thomas has the RFC to perform sedentary work, and she does not have any nonexertional limitations that affect her ability to work. Therefore, the ALJ did not need to hear testimony from a vocational expert. Furthermore, the applicable regulations make clear that the use of a vocational expert is within the Commissioner's discretion:

> If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist. We will decide whether to use a vocational expert or other specialist.

20 C.F.R. § 404.1566(e). Accordingly, the Court FINDS that it was well within the discretion of the ALJ not to use a vocational expert in Thomas's case.

## C. **Conclusion**

Based on the foregoing, the Court FINDS that: (1) The ALJ's determination that Thomas was not disabled prior to the expiration of her disability insured status on September 30, 2006, is supported by substantial evidence and was based on a correct application of the relevant law; and (2) Thomas's claim that the

27

ALJ was required to obtain vocational expert testimony is without merit.

## VI. **RECOMMENDATION**

For the foregoing reasons, the Court RECOMMENDS that the final decision of the Commissioner be AFFIRMED, that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED. Accordingly, the Court RECOMMENDS that the case be DISMISSED.

## VII. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's specific objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

28

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140, 153-54 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433, 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).

United States Magistrate Judge

Norfolk, Virginia
April 15, 2010

29

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Charlene A. Morring, Esq.
Montagna Klein Camden LLP
425 Monticello Avenue
Norfolk, Virginia 23510
Counsel for Plaintiff

Joel E. Wilson, Esq.
Assistant United States Attorney
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for Defendant

Fernando Galindo,

Clerk of Court

By: _____

Deputy Clerk

April /6, 2010